**IN THE UNITED STATES DISTRICT COURT OF OHIO
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER WRIGHT**, on behalf of himself and others similarly situated, | ) ) ) | Case No. 5:18-CV-00372-JG |
| Plaintiff, | ) ) ) | JUDGE JAMES S. GWIN |
| vs. | ) ) | |
| **PHYSICIAN'S & SURGEON'S AMBULANCE SERVICE, INC. D/B/A AMERICAN MEDICAL RESPONSE,** | ) ) ) ) | |
| Defendant. | ) ) | |

**JOINT MOTION FOR FINAL APPROVAL OF FLSA CLASS SETTLEMENT PORTION, AND FOR PRELIMINARY APPROVAL OF RULE 23 PORTION OF CLASS ACTION SETTLEMENT**

Representative Plaintiff Christopher Wright, on behalf of himself, and on behalf of the FLSA Class Members and the Ohio Class Members, and Defendant Physician's & Surgeon's Ambulance Service, Inc. d/b/a American Medical Response hereby respectfully request that this Honorable Court:

1.      Approve the Parties' Settlement Agreement, attached hereto as **Exhibit 1**;

2.      Give final approval to the FLSA Collective Action settlement portion;

3.      Designate Christopher Wright as the Class Representative for the FLSA Class Members and for the Ohio Class Members and approve his request for a Service Award; and

4.      Preliminarily approve the portion of the Ohio Rule 23 Class Action Settlement ("Ohio Class Action Settlement") and approve the Notice of Proposed Settlement of Class Action and Fairness Hearing (Ohio Class Action Settlement Notice) to the Ohio Class Members, attached as Exhibit C to the Settlement Agreement, pursuant to Fed. R. Civ. P. 23(e).

In support of these motions, Representative Plaintiff and Defendant submit the Settlement Agreement and its exhibits (*see* **Exhibit 1**), which consist of the following documents and proposed orders:

| | |
|---|---|
| Exhibit A: | List of Ohio Class Members and payments |
| Exhibit B: | List of FLSA Class Members and Payments |
| Exhibit C: | Ohio Class Action Settlement Notice |
| Exhibit D: | Proposed Order granting Final Approval of the FLSA Collective Action Settlement |
| Exhibit E: | Proposed Order granting Preliminary Approval of the Ohio Class Action Settlement and approving the form, content and method of distribution of the Ohio Class Action Settlement Notice |

Representative Plaintiff and Defendant also submit the Declaration of Hans A. Nilges, attached hereto as **Exhibit 2**.

The following schedule sets forth a proposed sequence and time line for the Settlement:

Within five (5) business days after Preliminary Approval of the Ohio Class Action Settlement and Final Approval of the FLSA Collective Action Settlement: Defendant, if it has not done so already, will provide the Class Counsel a spreadsheet containing the names, last known addresses, and Social Security Numbers of the Ohio Class Members. Defendant shall identify on that spreadsheet whether each Ohio Class Member is a Qualified EMTs and Paramedics Sub-Class Member or a Non-Qualified EMTs and Paramedics Sub-Class Member;

Within fourteen (14) days after Preliminary Approval of the Ohio Class Action Settlement: Class Counsel shall mail to the Ohio Class Members the Ohio Class Action Settlement Notice;

Within forty-five (45) days after the initial mailing of the Ohio Class Action Notice: Last day for Ohio Class Members to "opt-out" of the Settlement and/or submit written objections to the Settlement;

Within ninety (90) days after initial mailing of the Ohio Class Action Notice: Last day for filing and serving of papers in support of final approval for Ohio Class Action Settlement;

Within ninety (90) days after initial mailing of the Ohio Class Action Settlement Notice: Class Counsel will file a Declaration verifying that the Ohio Class Action Settlement Notice was distributed, and the Parties will then submit the proposed estimated schedule of settlement payments to the Court and an updated version of the proposed Final Order and Entry of Judgment;

More than ninety (90) days after initial mailing of the Ohio Class Action Settlement Notice **[DATE TO BE SET BY COURT]**: Fairness Hearing and Final Settlement approval hearing at **[TIME TO BE SET BY COURT]**;

Thirty-One (31) days after the Court's Final Order and Entry of Judgment: the Effective Date of the Settlement Agreement;

Within fourteen (14) days following the Effective Date, Defendant shall mail to Class Counsel the individual Class Member Payments;

Within fourteen (14) days following the Effective Date, Defendant shall mail to Class Counsel their attorneys' fees, costs and expenses as approved by the Court;

Within twenty-one (21) days following the Effective Date, Class Counsel shall mail to Claimants their Settlement Awards;

As explained in the attached Memorandum filed in Support of this Joint Motion, the Settlement Agreement was reached during arms-length negotiations between the Parties following substantial investigation, exchange of employee data and payroll information, and on the basis of mutual recognition of the strengths and weaknesses of each party's positions, and the risks and costs to each side of continued litigation.

Dated:  January 28, 2018

Respectfully submitted,

*/s/ Hans A. Nilges*
Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
**Nilges Draher LLC**
7266 Portage St., N.W., Suite D
Massillon, Ohio 44646
(330) 470-4428 – Telephone
(330) 754-1430 – Facsimile
hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

Robi J. Baishnab (0086195)
**Nilges Draher LLC**
34 N. High St., Ste. 502
Columbus, OH 43215
(614) 824-5770 – Telephone
(330) 754-1430 – Facsimile
rbaishnab@ohlaborlaw.com

*Counsel for Plaintiff*

*/s/  Daniel F. Fears*
Daniel F. Fears (Lead Trial Counsel for Defendant),
(Admitted *pro hac vice*) CA Bar No. 110573
dff@paynefears.com;
Sean A. O'Brien
(Admitted *pro hac vice*) CA Bar No. 133154
sao@paynefears.com
**PAYNE & FEARS LLP**
Attorneys at Law 4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212
*Counsel for Defendant*

**MEMORANDUM IN SUPPORT**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Action

On February 15, 2018, the Class Representative Plaintiff Christopher Wright filed this Action, alleging that Defendant violated the Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201-219 *et seq*.) and the Ohio overtime statute (Ohio Rev. Code Ann. §4111.03 *et seq*.) ("OMFWSA") by failing to pay Plaintiff and other similarly situated employees all of their overtime pay.  Specifically, Plaintiff alleged Defendant did not pay the correct overtime rate because Defendant allegedly failed to factor into the regular rate of pay certain sign-on bonuses paid to Plaintiff and putative class members upon being hired. (Doc. #1).

Defendant denied the allegations and claims, and asserted various affirmative defenses, including the defenses of offset/set-off and prior material breaches of the sign-on bonus contracts by Plaintiff and other putative class members.  If proven, certain of these defenses would entitle Defendant to repayment or reimbursement of the sign-on bonuses previously paid out to putative class members but not earned under the terms of their sign-on bonus contracts (Doc. #14).

On or about September 21, 2018, the Court granted in part, and denied in part, Plaintiff's motion for conditional certification of the FLSA class (Doc. #28). Thereafter, notice was sent out to putative class members allowing them to opt-in to the defined FLSA class (Doc. ##s 30-31). At the close of the opt-in period, a total of twelve (12) putative class members had filed opt-in and consent forms with the Court (*i.e*., the "FLSA Class").

### B.    Negotiation of The Settlement

The Parties have exchanged and analyzed factual disclosures and employee timekeeping and payroll data. (Nilges Decl. at ¶ 11). The Parties have also engaged experts and/or knowledgeable accounting personnel to review the timekeeping and pay records. (Nilges Decl. at

1

¶ 12). This document exchange enabled the Parties to understand and assess the detail and substance of their respective claims, counterclaims and defenses. (Nilges Decl. at ¶ 13).

The Parties engaged in early settlement discussions, which eventually led to a settlement being reached. (Nilges Decl. at ¶ 14). The terms of the settlement that are reflected in the Joint Stipulation Regarding FLSA and Ohio Class Action Settlement and Release (the "Settlement Agreement"), attached as **Ex. 1** and subject to Court approval, will fully and finally settle, resolve, and dismiss with prejudice this dispute.

The attached Settlement Agreement reflects the Parties' desires to avoid incurring further burdens, expenses and costs of the Action, to resolve, in an amicable fashion, all matters arising out of or related to the Action and any claims that could have been raised in the Action, and to fully, finally, and forever settle, compromise, and discharge all Released Claims for the Released Parties and through the Release Period, as defined in the Settlement Agreement.

Class Counsel has conducted a thorough investigation into the facts of the Action and has diligently pursued an investigation of the Plaintiff's individual and class claims against Defendant. (Nilges Decl. at ¶ 18).  Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant is fair, reasonable, adequate, and is in the best interest of the Plaintiff and Class Members, in light of all known facts and circumstances, including the risks of significant delay and continued litigation, the defenses asserted by Defendant, and the possibility that the Representative Plaintiff, FLSA Class Members, and Ohio Class Members otherwise may not recover anything or may recover an amount less than provided for in this Agreement, and/or that some or all of the FLSA or Ohio Class Members will be subject to Defendant's affirmative defenses. (Nilges Decl. at ¶ 19).

C.     **The Settlement Terms**

The Settlement Agreement encompasses an FLSA Collective Action Settlement for the FLSA Class Members (defined below) and an Ohio Rule 23 Class Action Settlement for the Ohio Class Members (defined below). The persons eligible for a settlement payment under the Settlement Agreement consist of:

- Ohio Class Members, which consists of the two subclasses: "Qualified EMTs and Paramedics Sub-Class" and "Non-Qualified EMTs and Paramedics Sub-Class." The "Qualified EMTs and Paramedics Subclass" consists of EMTs and Paramedics who entered into sign-on bonus contracts upon commencement of their employment with Defendant, and who remained as full-time employees for the entire period required under their sign-on bonus contracts (either 1 year for EMTs or 2 years for Paramedics), and who worked more than forty (40) hours in any workweek during the period their sign-on bonus contracts were in effect. The "Non-Qualified EMTs and Paramedics Sub-Class" consists of EMTs and Paramedics who entered into sign-on bonus contracts upon commencement of their employment with Defendants but who did **not** remain as full-time employees for the entire period required under their sign-on bonus contracts (either 1 year for EMTs or 2 years for Paramedics), but who also worked more than forty (40) hours in any workweek during the period their sign-on bonus contracts were in effect.  Both the Ohio Rule 23 Qualified EMTs and Paramedics Sub-Class members and the Ohio Rule 23 Non-Qualified EMTs and Paramedics Sub-Class members are separately identified in Exhibit A of the Settlement Agreement.

- FLSA Class Members, who meet either the definition of "Qualified EMTs and Paramedics Subclass" or "Non-Qualified EMTs and Paramedics Sub-Class" above, and which are defined as Representative Plaintiff and the twelve (12) Opt-In plaintiffs who have filed consent/opt-in forms to date and which are identified in Exhibit B of the Settlement Agreement.

The terms of the Settlement Agreement include: the total settlement payment to be made by Defendant of ($22,296.95); the Effective Date of the Settlement; the process for distributing notice of the Ohio Class Action Settlement to the Ohio Class Members; the process by which the Ohio Class Members can opt-out of or object to the Ohio Class Action Settlement; the process for calculating settlement shares; the process for distributing settlement payments to FLSA Class Members and Ohio Class Members who do not opt-out of the Ohio Class Action Settlement; the proposed service awards to the Representative Plaintiff in recognition of his services in this

3

Action; and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Class Counsel.

1.  The settlement shares for the FLSA Class Members are outlined in Exhibit B of the Settlement Agreement.

2.  The individualized settlement shares for both FLSA Class Members and the Ohio Class Members (collectively hereinafter referred to as "Claimants") shall be calculated as follows pursuant to the methodology/formula provided in 29 C.F.R. § 778.209(b) for those FLSA Class Members who have timely submitted and filed opt-in and consent forms with the Court, and for those Ohio Class Members who do not opt-out of the Ohio Class Action Settlement:

    a.  For Non-Qualified EMTs and Paramedics Sub-Class members: Total sign-on bonus received at commencement of hiring, divided (÷) by total hours worked in the Relevant Time Period under his/her sign-on bonus contracts (which "Relevant Time Period" is measured by either 1 year for EMTs or 2 years for Paramedics from commencement of employment, and includes both regular and overtime hours worked), then multiplied (×) by overtime hours worked during the Relevant Time Period, then multiplied (×) by .5.

    b.  For Qualified EMTs and Paramedics Sub-Class members: the amount shall be calculated using the same methodology/formula as set forth in subparagraph "a." immediately above, but then doubled.

Most significantly, under the terms of the Settlement, each Non-Qualified EMTs and Paramedics Sub-Class member under this methodology/formula will receive 100% of the unpaid overtime alleged, while those in the Qualified EMTs and Paramedics Sub-Class will receive

200% of the unpaid overtime alleged (50% of which will be treated as liquidated damages). (Nilges Decl. at ¶ 23).

Upon the Effective Date, the Representative Plaintiff and the Claimants,[1] fully and forever waive, discharge, and release any and all claims, demands, damages, actions, causes of action and liabilities against Defendant, its parent, subsidiaries, affiliated and related companies, and against its past and present officers, directors, members, employees, agents, predecessors, shareholders, partners, successors, assigns, heirs, executors, insurers, assigns and administrators (collectively referred to as the "Released Parties") relating to any and all federal or state law wage and hour matters and any claims specifically arising out of the subject matter of the Action, at any time occurring between February 15, 2015, and the date the Court enters Final Approval of the Ohio Class Action Settlement ("Release Period").

Likewise, as of the Effective Date Defendant will release and waive all claims, demands, damages, actions, causes of action and liabilities against Plaintiff, opt-in FLSA Class Members, and non-opting out and non-objecting Ohio Class Members, who are part of and participate in the Settlement, that pertain to any claim for repayment or reimbursement of any amounts previously paid  by Defendant as sign-on bonuses to Plaintiff, or the settling Claimants.

## II.    MOTION FOR FINAL APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

The FLSA Collective Action settlement is subject to approval by the Court pursuant to §216(b) of the FLSA.  As shown in the attached Declaration of Hans A. Nilges, and as explained below, Court approval is warranted.

---

[1] "Claimants" means all Ohio Class Members who do not opt-out of the Ohio Class Action and/or FLSA Class Members.

## A.   **The Seven-Factor Standard Is Satisfied**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the Plaintiff fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499 at *3. As shown below and in the Declaration of Hans A. Nilges, this standard supports approval of the Settlement.

### 1.   **No Indicia of Fraud or Collusion Exists.**

Class Counsel has extensive experience litigating FLSA claims, including claims for unpaid overtime. The Settlement Agreement was achieved only after arms-length and good faith

negotiations between the Parties, both represented by knowledgeable and skilled counsel (Nilges Decl. ¶ 22). As such, there is no indicia of fraud or collusion.

### 2. The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Plaintiff's claims. Plaintiff claimed that Defendant failed to pay Plaintiff and other similarly situated employees all of their overtime pay. Specifically, Plaintiff alleged Defendant did not pay the correct overtime rate because Defendant allegedly failed to factor into the regular rate of pay for certain sign-on bonuses paid up front to Plaintiff and putative class members upon hire. (Nilges Decl. ¶ 8).

Defendant denied the allegations and claims, and asserted various affirmative defenses, including the defenses of offset/set-off and prior material breaches of the sign-on bonus contracts by Plaintiff and other putative class members, thereby entitling Defendant to repayment or reimbursement of the sign-on bonuses previously paid out. Defendant contends that the amount owed by "non-qualifying" Class Members for failing to pay back unearned bonuses far exceeds the potential liability relating to Plaintiff's class claims.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the Representative Plaintiff, the FLSA Class Members and the Ohio Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Nilges Decl. ¶ 23).

7

### 3.    Investigation Was Sufficient to Allow the Parties to Act Intelligently.

Class Counsel conducted a thorough investigation into the facts of the Action and diligently pursued an investigation of the Plaintiff's individual and class claims against Defendant. (Nilges Decl. ¶ 18). The Parties have exchanged and analyzed factual disclosures and employee timekeeping and payroll records and data. (Nilges Decl. ¶ 11). The Parties also engaged experts and/or knowledgeable accounting personnel to review the timekeeping and pay records. (Nilges Decl. ¶ 12). Therefore, the Parties sufficiently investigated their respective positions to act intelligently.

### 4.    The Risks of Litigation Favor Approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all. (Nilges Decl. ¶ 20).

### 5.    Uncertainty of Recovery Supports Approval.

Plaintiff's range of possible recovery is also open to dispute. Even if Plaintiff succeeded on the merits of his individual claim, the amount of recovery is uncertain and something upon which the Parties continue to disagree. As an example, the Parties disagree about the applicable statute of limitations, about whether the regular rate was properly calculated and paid as overtime, whether all Class members worked overtime, and whether set-offs would reduce damages. (Nilges Decl. ¶ 21).

### 6.    Experienced Counsels' Views Favor Approval.

Class Counsel has extensive experience in wage-and-hour collective and class actions, the Parties have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Class Counsel and Defendant's Counsel support the Settlement as fair and reasonable, and in the best interest of the Plaintiff as a whole, as described in the Declaration of Hans A. Nilges. (Nilges Decl. ¶ 24).

### B.    <u>The Settlement Distributions Are Fair, Reasonable and Adequate.</u>

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for the Plaintiff and class members.

### 1.    The Settlement Shares Are Reasonable and Adequate.

The settlement shares for the FLSA Class Members are outlined in Exhibit B of the Settlement Agreement. The settlement shares for both the FLSA Class Members and the Ohio Class Members shall be calculated as follows pursuant to the methodology/formula provided in 29 C.F.R. § 778.209(b) for those putative class members who do not opt-out of the Settlement:

> a. For Non-Qualified EMTs and Paramedics Sub-Class: Total sign-on bonus received at commencement of hiring, divided (÷) by total hours worked In the Relevant Time Period  under his /her bonus contract (which "Relevant Time Period" is measured by either 1 year for EMTs or 2 years for Paramedics from commencement of employment, and includes both regular and overtime hours

worked), then multiplied (×) by overtime hours worked during the Relevant Time Period, then multiplied (×) by .5.

b. For Qualified EMTs and Paramedics Sub-Class: the amount shall be calculated using the same methodology/formula as set forth in subparagraph "a." immediately above, but then doubled.

Under the terms of the Settlement, each Non-Qualified EMTs and Paramedics Sub-Class member under this methodology/formula will receive 100% of the unpaid overtime alleged, while those in the Qualified EMTs and Paramedics Sub-Class will receive 200% of the unpaid overtime alleged (50% of which will be treated as liquidated damages).  (Nilges Decl. at ¶ 23).

### 2. Representative Plaintiff' Service Awards Are Proper and Reasonable.

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Representative Plaintiff agreed to put his name on the line, contributing significant time, effort, and detailed factual information enabling the Parties to successfully resolve this matter. His time and effort support the requested service payment. (Nilges Decl. ¶ 25).

### 3.      Class Counsel Fees and Expenses Are Proper and Reasonable.

After the Court has confirmed that the terms of settlement are fair to the Representative Plaintiff, the FLSA Class Members and the Ohio Class Members, it may review the Parties' agreement as to the provision of fees and costs to Class Counsel. The Settlement reflects Defendant's agreement to pay Class Counsel up to Ten Thousand Dollars ($10,000) in the aggregate for fees, expenses and costs.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate,*

*Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir. 1984)). Additionally, the OMFWSA, which is interpreted in accordance with the FLSA,[2] also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Class Members were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants notice to the class of Plaintiffs' attorneys' fee request. Prior to the Fairness Hearing, Class Counsel will submit supplemental information regarding the reasonableness of the fee request.

A statement of expenses will also be submitted by Class Counsel prior to the Fairness Hearing. Expenses are currently estimated to be approximately $626.86, which includes the estimated costs of mailing class notice, if approved. All such expenses were and/or will be incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of Representative Plaintiff and the Class Members, and mailing notice to the putative Ohio Rule 23 Class Members (Nilges Decl. ¶ 26). The amount of fees and costs agreed upon includes fees and expenses through settlement approval, sending Ohio Class Notice of Settlement, attending the Fairness Hearing, and dismissal.

On the basis of these factors, the Court should grant final approval of the FLSA Class Settlement.

---

[2] *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, at fn 2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

### III.    MOTION FOR PRELIMINARY APPROVAL OF OHIO CLASS ACTION SETTLEMENT

The proposed Ohio Class Action Settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

#### A.    Preliminary Approval of the Ohio Class Action Settlement Under Rule 23(b) Is Warranted.

##### 1.    Certification of the Settlement Class Is Appropriate.

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Ohio Class, consisting of fifty-eight (58) members, is "so numerous that joinder of all members is impracticable." Common issues of law or fact are presented by the Ohio Class's claims under the OMFWSA, including whether Defendant failed to factor into the regular rate of pay for certain sign-on bonuses paid up front to Plaintiff and putative class members upon hire.

Representative Plaintiff Wright is an adequate representative of the Ohio Class in that he has common interests with other class members and he has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Ohio Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented under the OMFWSA predominate over any individual questions.

13

Class-wide resolution of this controversy is superior to the alternative of litigating dozens of individual lawsuits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2.     The Class Notice Satisfies Rule 23 and Due Process.

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir. 2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir. 1994). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out

whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed notice to the Ohio Class Members satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the notice will be sent to the Class Members of the class by first-class mail using the addresses shown in Defendant's records.

### B.  Approval of the Settlement Under Rule 23(e) Is Warranted.

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A.*

*Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1.  The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As discussed in detail above, the seven-factor standard supports approval of the Settlement.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV.  CONCLUSION

The Representative Plaintiff and Defendant request that this Court enter the Orders attached as **Exhibits D** and **E** to the Settlement Agreement:

1. Approve the Parties' Settlement Agreement, attached hereto as **Exhibit 1**;

2. Grant final approval of the FLSA Collective Action settlement;

3. Designate Christopher Wright as the Class Representative for the FLSA Class Members and the Ohio Class Members, and approve his request for Service Award;

4. Preliminarily approve the Ohio Class Action settlement and approve the Ohio Class Action Settlement Notice to the Ohio Class Members, attached as **Exhibit C** to the Settlement Agreement, pursuant to Fed. R. Civ. P. 23(e);

5. Designate Hans A. Nilges, Shannon M. Draher and Robi J. Baishnab of Nilges Draher, LLC as Class Counsel, and preliminarily approve their request for attorneys' fees and costs.

Respectfully submitted,

<table>
<tr>
<td>

*/s/ Hans A. Nilges*         
Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
**Nilges Draher LLC**
7266 Portage St., N.W., Suite D
Massillon, Ohio 44646
(330) 470-4428 – Telephone
(330) 754-1430 – Facsimile
hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

Robi J. Baishnab (0086195)
**Nilges Draher LLC**
34 N. High St., Ste. 502
Columbus, OH 43215
(614) 824-5770 – Telephone
(330) 754-1430 – Facsimile
rbaishnab@ohlaborlaw.com

*Counsel for Plaintiff*

</td>
<td>

*/s/  Daniel F. Fears*        
Daniel F. Fears (Lead Trial Counsel for Defendant),
(Admitted *pro hac vice*) CA Bar No. 110573
dff@paynefears.com;
Sean A. O'Brien
(Admitted *pro hac vice*) CA Bar No. 133154
sao@paynefears.com
**PAYNE & FEARS LLP**
Attorneys at Law 4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

*Counsel for Defendant*

</td>
</tr>
</table>

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 28,  2019, a copy of the foregoing *Joint Motion for Final Approval of FLSA Settlement and Joint Motion For Preliminary Approval Of Ohio Class Action Settlement* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

        /s/ *Hans A. Nilges*
Counsel for Plaintiff

4848-8107-1749.1 4811-5772-9414.1